# Exhibit
# A

JUN 18 01 0 0 2 4 7 2



UC2666407-014

Document Number

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

2666407

REGISTER'S OFFICE
WAUKESHA COUNTY, WI
RECORDED ON

06-18-2001  2:38 PM

MICHAEL J. HASSLINGER
REGISTER OF DEEDS

REC.  FEE:      30.00
REC.  FEE-CO:    4.00
REC.  FEE-ST:    2.00
TRAN.  FEE:
TRAN. FEE-STATE:
PAGES:          14

This space reserved for recording data

RETURN TO
Russell S. Woodward
Kennedy Covington Lobdell & Hickman, L.L.P.
Bank of America Corporate Center
100 N. Tryon Street, Suite 4200
Charlotte, NC  28202-4006

Loan No.: 55392
Servicing No.: 3130465

Drawn By and Return To:
Kennedy Covington Lobdell & Hickman, L.L.P.
Bank of America Corporate Center
100 North Tryon Street, Suite 4200
Charlotte, North Carolina 28202-4006

STATE OF WISCONSIN

COUNTY OF WAUKESHA

MORTGAGE,
ASSIGNMENT OF
LEASES AND RENTS,
SECURITY AGREEMENT AND
FIXTURE FILING

## COLLATERAL IS OR INCLUDES FIXTURES

THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (the "Security Instrument") is made and entered into as of the __18__ day of ___June___, 2001, which date shall be the effective date of this Security Instrument, by WAUKESHA, LLC, a Michigan limited liability company (the "Borrower"), in favor of BANK OF AMERICA, N.A., a national banking association, together with its successors and assigns (the "Lender").

This Security Instrument secures (i) the obligations of the Borrower under the promissory note, executed by the Borrower, of even date herewith, payable to the order of the Lender in the original principal amount of $8,640,000.00 (such promissory note and all amendments, renewals, replacements, extensions or other modifications being hereinafter referred to as the "Note"); (ii) the performance by the Borrower of its obligations under the Loan Agreement of even date herewith between the Borrower and the Lender (as amended, modified or restated, the "Loan Agreement") and under all other Loan Documents (as defined in the Loan Agreement) executed by the Borrower in connection with the loan evidenced by the Note (the "Loan"); and (iii) the payment by the Borrower of all other sums, with interest thereon, advanced in accordance with the Note, the Loan Agreement or any other Loan Document to protect the security of this Security Instrument.

Capitalized terms used, but not defined, herein shall have the meanings given to such terms in the Loan Agreement. All of the terms, definitions, conditions and covenants of the Loan Agreement are expressly made a part of this Security Instrument by reference in the same manner and with the same effect as if set forth herein at length and any beneficiary of this Security Instrument is entitled to the benefits of and remedies provided in the Loan Agreement, the Note and other Loan Documents by and between the Borrower and the Lender.

## W I T N E S S E T H:

The Borrower, in consideration of the indebtedness herein recited, irrevocably grants, mortgages, conveys and assigns to the Lender and the Lender's successors and assigns, all of the following described land, real property interests, buildings, improvements, fixtures, furniture and appliances and other personal property:

(a) All that tract or parcel of land and other real property interests in Waukesha County, Wisconsin more particularly described in Exhibit A attached hereto and made a part hereof (the "Land"), subject to the permitted encumbrances described in Exhibit B attached hereto and made a part hereof (the "Permitted Encumbrances"); and

1963625.02
LIB: CH

JUN 18 01 0 0 2 4 7 4

(b)        All buildings, improvements and tenements of every kind and description now or hereafter erected or placed on the Land (the "Improvements") and all materials intended for construction, reconstruction, alteration and repair of such Improvements now or hereafter owned by the Borrower and erected or placed thereon, all of which materials shall be deemed to be included within the premises hereby conveyed immediately upon the delivery thereof to the Land, and all Tangible Personalty (as defined in the Personalty Rider attached hereto and made a part hereof for all purposes).

TO HAVE AND HOLD the same, together with all privileges, hereditaments, easements and appurtenances thereunto belonging, to the Lender and the Lender's successors and assigns to secure the indebtedness herein recited and upon this special trust: that should the indebtedness secured hereby be paid according to the tenor and effect thereof when the same shall be due and payable and should the Borrower timely and fully discharge its obligations hereunder and under the other Loan Documents, then the Land, Improvements and Tangible Personalty (hereinafter collectively referred to as the "Premises") shall be reconveyed to the Borrower or the title thereto shall be revested according to the provisions of applicable law and this instrument shall be discharged and terminated.

As additional collateral and further security for the indebtedness secured hereby, to the fullest extent permitted by applicable law, the Borrower does hereby assign to the Lender and grants to the Lender a security interest in: (i) all of the right, title and interest of the Borrower in and to any and all Intangible Personalty (as defined in the Personalty Rider attached hereto), and (ii) any and all escrow accounts, collection accounts or deposit accounts owned by the Borrower and relating to the Premises now maintained or to be established from time to time and any and all certificates or instruments purchased with funds deposited in such account(s), and all renewals of such instruments or certificates and all replacements therefore, whether in the form of certificates of deposit or other instruments, notes, securities or accounts (including, without limitation, money market instruments and accounts) and any other cash or non-cash proceeds of the principal amount of any of the foregoing, including interest and dividends thereon, if any, and all proceeds therefrom including, without limitation, interest or dividends, if any, on the accounts and all certificates, instruments, notes, securities or accounts. The Borrower agrees to execute and deliver to the Lender such additional instruments, in form and substance satisfactory to the Lender, as may hereafter be requested by the Lender to evidence and confirm said assignment and grant of security interest; provided, however, that acceptance of any such assignment and grant of security interest shall not be construed as a consent by the Lender to any of the foregoing or to impose upon the Lender any obligation with respect thereto.

As part of the consideration for the indebtedness secured hereby, the Borrower hereby absolutely and unconditionally assigns and transfers to the Lender and grants to the Lender a security interest in any and all leases and other occupancy or use agreements (whether oral or written) now existing or hereafter made and affecting the Premises as such leases and other agreements may have been, or may from time to time be hereafter, modified, extended and renewed, with all the security deposits, rents (including, without limitation, room rents and room revenues, if any), issues, profits, revenues and other income of the Premises from time to time accruing therefrom (the "Rents and Profits"), and the acceptance of this assignment and the collection of the Rents and Profits or the payments under the leases hereby assigned shall not constitute a waiver of any rights of the Lender under the terms of the Loan Documents. So long as there shall exist no Event of Default (as defined in the Loan Agreement), the Borrower shall have the right under a license granted hereby (but limited as provided elsewhere in this Security Instrument and in the Loan Agreement) to collect upon, but not more than two months prior to accrual, all of said Rents and Profits, arising from or out of such leases and other agreements or any modifications, renewals or extensions thereof, or from or out of the Premises or any part thereof, and the Borrower shall receive such Rents and Profits, as a trust fund to be applied, and the Borrower hereby covenants to so apply same, to the payment of taxes and assessments upon the Premises before penalty or interest are due thereon, to the cost of such insurance and of such maintenance and repairs as is required by the terms of the Security Instrument and Loan Agreement, to the payment of Operating Expenses (as defined in the Loan Agreement), and to the payment of interest and principal and other amounts becoming due on the Loan or under the Loan Documents, before using any part of the same for any other purposes.

All the Tangible Personalty which comprises a part of the Premises shall, as far as permitted by applicable law, be deemed to be affixed to the Land and conveyed therewith. As to the balance of the Tangible Personalty and the Intangible Personalty, this Security Instrument shall be considered to be a security agreement which creates a security interest in such items for the benefit of the Lender, and in any and all proceeds of such collateral. In that

2

1963625.02
LIB: CH

regard, the Borrower grants to the Lender all of the rights and remedies of a secured party under the laws of the state in which the Premises is located.

The Borrower covenants, warrants, represents and agrees as follows:

1.  **Amount Secured.** This Security Instrument secures all present and future loan disbursements made by the Lender under the Note, and all other sums from time to time owing to the Lender by the Borrower under the other Loan Documents, including, without limitation, sums advanced in accordance herewith to protect the security of this Security Instrument. The original principal amount secured hereby is $8,640,000.00.

2.  **Acceleration; Foreclosure.** Upon the occurrence of an Event of Default, the Lender, at the Lender's option, may declare the entire balance of the Loan, including all accrued interest, to be immediately due and payable without further demand and may foreclose the lien of this Security Instrument by judicial proceeding and may pursue any other remedies permitted by applicable law or provided herein or in any of the other Loan Documents. The Lender shall be entitled to collect all fees, costs and expenses incurred in pursuing such remedies, including, but not limited to, reasonable attorney's fees, costs of documentary evidence, abstracts and title reports.

3.  **Rights Upon Event of Default.** Upon the occurrence of any Event of Default, the Lender, immediately and without additional notice and without liability therefor to the Borrower, except for Gross Negligence (as defined in the Loan Agreement) or willful misconduct, may, in accordance with, and subject to, the terms and conditions of the Loan Agreement, do or cause to be done any or all of the following: (a) take physical possession of the Premises; (b) exercise its right to collect the Rents and Profits; (c) enter into contracts for the repair and maintenance of the Improvements thereon; (d) expend Loan funds and any Rents and Profits for payment of any taxes, insurance premiums, assessments and charges for repair and maintenance of the Improvements, preservation of the lien of this Security Instrument and satisfaction and fulfillment of any liabilities or obligations of the Borrower arising out of or in any way connected with the use, repair or maintenance of Improvements on the Premises whether or not such liabilities and obligations in any way affect, or may affect, the lien of this Security Instrument; (e) enter into leases demising the Premises or any part thereof, pay any leasing commissions in connection therewith, and make arrangements with tenants with respect to tenant improvements, moving costs, and other concessions, all as the Lender may elect in its sole and absolute discretion; (f) take any steps to protect and enforce the specific performance of any covenant, condition or agreement in the Note, this Security Instrument, the Loan Agreement, or the other Loan Documents, or to aid in the execution of any power herein granted; (g) take such steps to protect and enforce the specific performance of any covenant, condition or agreement as to the Intangible Personalty; and (h) generally, supervise, manage, and contract with reference to the Premises as if the Lender were an equitable owner of the Premises, and upon such terms and conditions as the Lender may elect in its sole and absolute discretion. Notwithstanding the occurrence of an Event of Default or acceleration of the Loan, the Lender shall continue to have the right to pay money, whether or not Loan funds, for the purposes described in the Loan Agreement, and all such sums and interest thereon shall be secured hereby. The Borrower also agrees that any of the foregoing rights and remedies of the Lender may be exercised at any time independently of the exercise of any other such rights and remedies, and the Lender may continue to exercise any or all such rights and remedies until the Event of Default is cured or until foreclosure and the conveyance of the Premises to the high bidder or until the Loan is otherwise satisfied or paid in full.

4.  **Rents and Profits.**

    (a)   **Collection.** The Borrower hereby authorizes the Lender, by its employees or agents, at its option, after the occurrence of an Event of Default, with or without notice to or demand on the Borrower, to terminate the aforesaid license granted to the Borrower to collect said Rents and Profits, and to enter upon the Premises, and to collect, in accordance with the Loan Agreement and in the name of the Borrower or in its own name, as assignee, the Rents and Profits accrued but unpaid and in arrears at the date of said Event of Default as well as the rents thereafter accruing and becoming payable during the period of the continuance of such Event of Default or any other Event of Default; and to this end, the Borrower further agrees that it will facilitate in all reasonable ways the Lender's collection of said Rents and Profits, and will, upon request by the Lender, execute a written notice to each tenant directing the tenant to pay rent to the Lender. Upon such entry, the Lender shall be authorized, but not obligated, to take over and assume the control, care, management, operation, repair and maintenance of the Premises and to perform such other acts as the Lender in its sole and absolute discretion may deem proper, and to expend such

3

1963625.02
LIB: CH

sums out of the income of the Premises as may be needful in connection therewith (including the right to effect new leases, to cancel or surrender existing leases, to evict tenants, to bring or defend any suits in connection with the possession of any portion of the Premises in its own name or the Borrower's name, to alter or to amend the terms of existing leases, to renew existing leases, and to make concessions to the tenants). The Borrower hereby releases all claims against the Lender arising out of such management, operation, repair and maintenance, excepting the liability of the Lender to account as hereinafter set forth, and except claims arising from the Gross Negligence or willful misconduct of the Lender.

(b)     Indemnity. Unless and until the license granted to the Borrower in this Security Instrument to collect the Rent and Profits is terminated and the Lender physically enters the Premises as described herein, in person or by agent (provided that a receiver appointed by a court shall not be deemed to be an agent of the Lender), the Lender shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by the Borrower under any of said leases, and the Borrower hereby agrees to indemnify the Lender for, and to save it harmless from, any and all liability arising from any of said leases or from this assignment, and this assignment shall not place responsibility for the conduct, care, management, or repair of the Premises upon the Lender, or make the Lender responsible or liable for any negligence in the management, operation, upkeep, repair or control of said Premises resulting in loss or injury to, or death of, any invitee, tenant, licensee, employee or stranger and/or damage to, or destruction of, the Premises.

5.     Appointment of Receiver. Upon the occurrence of an Event of Default, the Lender shall be entitled, without additional notice and without regard to the adequacy of any security for the Loan or the solvency of any party bound for its payment, to seek the appointment of a receiver to take possession of and to operate the Premises, and to collect the Rents and Profits, all expenses of which shall be added to the Loan and secured hereby.

6.     Waivers. No waiver of any Default Condition or Event of Default shall at any time thereafter be held to be a waiver of any rights of the Lender stated anywhere in the Note, this Security Instrument, the Loan Agreement or any of the other Loan Documents, nor shall any waiver of any prior Default Condition or Event of Default operate to waive any subsequent Default Condition and/or Event of Default. All remedies provided in this Security Instrument, in the Note, in the Loan Agreement and in the other Loan Documents are cumulative and may, at the election of the Lender, be exercised alternatively, successively, or in any manner and are in addition to any other rights provided by applicable law.

7.     Terms. The singular used herein shall be deemed to include the plural; the masculine deemed to include the feminine and neuter; and the named parties deemed to include their heirs, successors and assigns, provided that nothing herein shall be construed to authorize or permit the Borrower to make or effect any transfer of any interest in or with respect to the Borrower or the Premises which is not permitted under the Loan Documents. The term "Lender" shall include any payee of the indebtedness hereby secured or any transferee thereof whether by operation of law or otherwise.

8.     Notices. All notices and other communications shall have been duly given and shall be effective (i) when delivered, (ii) when transmitted via telecopy (or other facsimile device) to the number set forth below, (iii) on the day following the day on which the same has been delivered prepaid to a reputable national overnight air courier service, or (iv) on the third Business Day following the day on which the same is sent by certified or registered mail, postage prepaid, in each case to the respective parties at the address set forth below, or at such other address as such party may specify by written notice to the other party hereto. No notice of change of address shall be effective except upon actual receipt. This Section shall not be construed in any way to affect or impair any waiver of notice or demand provided in any other Loan Document or to require giving of notice or demand to or upon any Person in any situation or for any reason.

if to the Borrower:     Waukesha, LLC
                        29777 Telegraph Road, Suite 2100
                        Southfield, Michigan 48034
                        Attn: Leo Sklar
                        Telephone: (248) 358-2323
                        Telecopy: (248) 683-1405

4

1963625.02
LIB: CH

| | |
|---|---|
| with copies to: | Jackier, Gould, Bean, Upfal & Eizelman, P.C.<br>Second Floor<br>121 West Long Lake Road<br>Bloomfield Hills, Michigan 48304-2719<br>Attn: Nathan Upfal<br>Telephone: (248) 642-0500<br>Telecopy: (248) 642-5241 |
| to the Lender: | Bank of America, N.A.<br>Capital Markets Servicing Group<br>333 S. Beaudry Avenue, 26th Floor<br>CA9-703-26-10<br>Los Angeles, California 90017<br>Telephone: (800) 462-0505<br>Telecopy: (213) 345-6587 |
| with a copy to: | Kennedy Covington Lobdell & Hickman, L.L.P.<br>Bank of America Corporate Center<br>100 North Tryon Street, Suite 4200<br>Charlotte, North Carolina 28202-4006<br>Attn: Russell S. Woodward<br>Telephone: (704) 331-7400<br>Telecopy: (704) 331-7598 |

The parties hereto agree that any notice sent to the Borrower at its address set forth herein (or designated in accordance with this Section) shall be deemed notice to all general partners or members of the Borrower, if any. Personal delivery to a party or to any officer, partner, member, agent or employee of such party at its address herein shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt.

9.    Greater Estate. In the event that the Borrower is the owner of a leasehold estate with respect to any portion of the Premises and, prior to the satisfaction of the indebtedness secured hereby and the cancellation of this Security Instrument of record, the Borrower obtains a fee estate in such portion of the Premises, then, such fee estate shall automatically, and without further action of any kind on the part of the Borrower, be and become subject to the security lien of this Security Instrument.

10.    Imposition of Tax. In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, in any manner changing or modifying the laws now in force governing the taxation of debts secured by mortgages or the manner of collecting taxes so as to affect adversely the Lender, the Borrower will promptly pay any such tax on or before the due date thereof; and if the Borrower fails to make such prompt payment or if any such state, federal, municipal or other governmental law, order, rule or regulation prohibits the Borrower from making such payment or would penalize the Lender if the Borrower makes such payment, then the entire balance of the Loan shall become due and payable upon demand at the sole option of the Lender.

11.    Headings. The captions and headings herein are inserted only as a matter of convenience and for reference and in no way define, limit, or describe the scope of this Security Instrument nor the intent of any provision hereof.

12.    General Provisions. A determination that any provision of this Security Instrument is unenforceable or invalid shall not affect the enforceability or validity of any other provision and the determination that the application of any provision of this Security Instrument to any Person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other Persons or circumstances. This Security Instrument may not be amended except in a writing specifically intended for such purpose and executed by the party against whom enforcement of the amendment is sought. The holder of this Security Instrument may, from time to time, sell or offer to sell the Loan, or any interests therein, to one or more transferees, assignees or participants and

5

1963625.02<br>LIB: CH

is hereby authorized to disseminate any information it has pertaining to the Loan, including, without limitation, any security for this Security Instrument and credit information on the Borrower, any of its principals and any Borrower Principal (as defined in the Loan Agreement), to any such transferee, assignee or participant or prospective transferee, assignee or participant, and to the extent, if any, specified in any such transfer instrument, assignment or participation, and such transferee, assignee or participant shall have the rights and benefits with respect to this Security Instrument and the other Loan Documents as such Person would have if such Person were the Lender hereunder. The Borrower warrants and represents to the Lender and all other holders of this Security Instrument that the Loan is and will be for business or commercial purposes only and not primarily for personal, family, or household use. The terms, provisions, covenants and conditions hereof shall be binding upon the Borrower and the heirs, devisees, representatives, successors and assigns of the Borrower, provided that nothing herein shall be construed to authorize or permit the Borrower to make or effect any transfer of any interest in or with respect to the Borrower or the Premises which is not permitted under the Loan Documents.

13.    WRITTEN AGREEMENT.

(a)    THE RIGHTS AND OBLIGATIONS OF THE BORROWER AND THE LENDER SHALL BE DETERMINED SOLELY FROM THIS WRITTEN SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS, AND ANY PRIOR ORAL OR WRITTEN AGREEMENTS BETWEEN THE LENDER AND THE BORROWER CONCERNING THE SUBJECT MATTER HEREOF AND OF THE OTHER LOAN DOCUMENTS ARE SUPERSEDED BY AND MERGED INTO THIS SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS.

(b)    THIS SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS MAY NOT BE VARIED BY ANY ORAL AGREEMENTS OR DISCUSSIONS THAT OCCUR BEFORE, CONTEMPORANEOUSLY WITH, OR SUBSEQUENT TO THE EXECUTION OF THIS SECURITY INSTRUMENT OR THE LOAN DOCUMENTS.

(c)    THIS WRITTEN SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

14.    WAIVER OF JURY TRIAL. THE LENDER AND THE BORROWER HEREBY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS SECURITY INSTRUMENT. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY THE LENDER AND THE BORROWER, AND THE LENDER AND THE BORROWER ACKNOWLEDGE THAT NO PERSON ACTING ON BEHALF OF ANOTHER PARTY TO THIS AGREEMENT HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THE LENDER AND THE BORROWER FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS SECURITY INSTRUMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF THEIR OWN FREE WILL, AND THAT THEY HAVE HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

15.    Non-Recourse. The Borrower's liability hereunder shall be limited to the same extent provided in the Note.

6

1963625.02
LIB: CH

JUN 18 01 0 0 2 4 7 9

IN WITNESS WHEREOF, the Borrower has executed this Security Instrument.

Execution Date:_____

BORROWER:

WAUKESHA, LLC
a Michigan limited liability company

By:_____
Name:    Harvey Wolf
Title:    Manager

STATE OF _MICHIGAN_     )
                                        ) ss.
COUNTY OF _OAKLAND_     )

Personally came before me this _____14_____ day of _June_, 2001, the above-named
_____Harvey Wolf_____, to me known to be the person(s) who executed the foregoing
instrument and acknowledged the same.

THOMAS R. AUGUST
Notary Public, Oakland County, MI
My Commission Expires Jun. 22, 2002

_____
Notary Public, _Oakland_ County, _Michigan_
Commission expires: _June 22, 2002_

1963625.02
LIB: CH

PERSONALTY RIDER

(Retail/Industrial/Office/Multifamily)

The term "Intangible Personalty" as used herein shall mean any and all present and future accounts, general intangibles, instruments, inventory, documents and chattel paper, all returned, rejected or repossessed goods, the sale or lease of which shall have given or shall give rise to an account or chattel paper, and all books and records in whatever media (paper, electronic or otherwise) recorded or stored, with respect to the foregoing and all equipment and general intangibles necessary or beneficial to retain, access and/or process the information contained in those books and records, now or hereafter owned by the Borrower and affecting or relating to the Premises or any part thereof, and all proceeds or products thereof, including without limitation, (i) all leases (including equipment leases), rental agreements, sales contracts, management contracts, franchise and related agreements, construction contracts, architects' contracts, technical services agreements, licenses and permits, (ii) all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale or lease of property or rendering of services by the Borrower in its business of ownership and operation of the Premises or acquired from others including, without limiting the generality of the foregoing, from rental of rooms, halls, stores, offices, exhibit or sales space of every kind, license, lease and concession fees and rentals, health club membership fees, food and beverage, whole and retail sales of merchandise, service charges, and proceeds, if any, from business interruption or other loss of income insurance, (iii) all of the Borrower's right, title and interest in all royalties, license fees and other income or proceeds derived from trademarks, trademark applications, the registration therefor, the good will of the business symbolized by the same, now or hereafter filed, owned or acquired.

The term "Tangible Personalty" as used herein shall mean any and all fixtures, equipment, furnishings and other articles of personal property now or hereafter owned by the Borrower and attached to or contained in and used in connection with the Land and Improvements including, but not limited to, all furniture, furnishings, apparatus, machinery, equipment, motors, boilers, buildings, materials, appliances, fire prevention and extinguishing apparatus, security and access control apparatus, trash receptacles, bath tubs, water heaters, water closets, sinks, dishwashers, disposals, washers, dryers, elevators, fittings, radiators, ranges, refrigerators, awnings, storm windows, storm doors, shades, screens, blinds, curtains and curtain rods, mirrors, cabinets, paneling, rugs, pictures, antennas, satellite dishes and systems, telecommunications systems (including, without limitation, equipment, facilities and devices), trees, plants, carpeting, office equipment and other furnishings and all plumbing, heating, lighting, cooking, laundry, ventilating, refrigerating, incinerating, trash compacting, air-conditioning and sprinkler equipment, telephone systems, televisions and television systems, audio and video systems (including, without limitation, equipment, facilities and devices), fitness and exercise equipment, computer systems and fixtures and appurtenances thereto and all renewals or replacements thereof or articles in substitution thereof, whether or not the same are or shall be attached to the Land and Improvements in any manner, and all proceeds and products of any of the foregoing.

1963625.02
LIB: CH

JUN 18 01 0 0 2 4 8 1

EXHIBIT A

Legal Description

1963625.02
LIB: CH

JUN 18 01 0 0 2 4 8 2

Parcel A:

Parcel 1 of Certified Survey Map No. 9186, Recorded on June 8, 2001, in Volume 83 of Certified Survey Maps, on Pages 100-104, as Document No. 2663967, being a part of the Northeast 1/4 of the Northwest 1/4 of Section 1, Town 6 North, Range 19 East, in the City of Waukesha, County of Waukesha, State of Wisconsin.

Parcel B:

A non-exclusive easement for pedestrian and vehicular ingress and egress for the benefit of Parcel A, as set forth in Cross Access Easement Agreement Recorded November 5, 1998, as Document No. 2383723.

Part of Tax Key No. WAKC 1298.990.001

Address: 925 S.T.H. "164"

JUN 18 01 0 0 2 4 8 3

EXHIBIT B

Permitted Encumbrances

.

.

1963625.02
LIB: CH

T 1. General taxes for the year 2001, not yet due and payable.

U 2. Covenants, conditions and restrictions (but omitting any such covenant, condition or restriction based on race, color, religion, sex, handicap, familial status, or national origin, unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code, or (b) relates to handicap but does not discriminate against handicapped persons) set forth in Deed Restriction, recorded as Document No. 2061558, providing for no forfeiture or reversion of title in case of violation. (Affects Parcel A)

W 3. Limitations upon Access as set forth in Award of Damages recorded as Document No. 577034.

X 4. Rights of the public in so much of the subject premises as are affected by ordinance adopted by the Board of Supervisors of Waukesha County June 18, 1954 and approved by the various towns in said County, establishing the width of S.T.H. "59" at 130 feet, and ordaining that said highway be widened to the width so established; together with rights of the public in that portion of said premises lying within the limits of said road and not affected by said ordinance. A notice and plat etc. in said matter was filed April 18, 1957, as No. 1.

Y 5. Cross Access Easement Agreement, including terms and conditions of the easement described as Parcel B, Schedule A hereof, recorded as Document No. 2383723.

AA 6. Rights to the use and maintenance of overhead and underground utility facilities across the subject premises, as shown on survey dated February 14, 2001, prepared by National Survey & Engineering, Inc. Job No. 158937.

AB 7. "Wetlands as located on August 20, 1998, by G.A.S.", as shown on survey dated February 14, 2001, prepared by National Survey & Engineering, Inc., Job No. 158937.

AD 8. Utility Easement made by and between Continental 78 Fund LLC, a Wisconsin limited liability company, and the Waukesha Water Utility, City of Waukesha, dated February 24, 2000 and recorded March 29, 2000, as Document No. 2549323.

AE 9. Holding Tank Agreement recorded October 28, 1999, on Reel 3009, Image 712, as Document No. 2515049 and Holding Tank Agreement recorded October 28, 1999, on Reel 3009, Image 714, as Document No. 2515050.

BD 10. Reciprocal Easement Agreement recorded June __, 2001, as Document No. _____.

BE 11. Utility Easements and Ingress and Egress Easement for the benefit of Parcel 2 as

- continued -

set forth on Certified Survey Map No. 9186.

BF   12. Access Restriction, 50' Highway Setback Line and Restriction and Noise
         Abatement Notes set forth on Certified Survey Map No. 9186.

BG   13. 10' Watermain Easement granted to Waukesha Water Utility and Easement Agreement
         set forth on Certified Survey Map No. 9186.

BC                                        * * * * *

BH       The title to the estate or interest in the land described in Schedule A is
         subject to the following matter but the Company insures that such matter is
         subordinate to the lien of the insured mortgage except for the rights of the
         Lessee(s) under the Non-Disturbance provisions contained in the Subordination,
         Non-Disturbance and Attornment Agreement described below:

         Leasehold estate of JEWEL FOOD STORES, INC. as lessee under lease executed
         by and between said lessee and CONTINENTAL 78 FUND LLC WAUKESHA, L.L.C. lessor,
         a Memorandum of which was recorded as Document No. 2329700, and which Leasehold
         estate was made subordinate to the lien of the insured mortgage by
         Subordination, Non-Disturbance and Attornment Agreement executed by and between
         JEWEL FOOD STORES, INC. and WAUKESHA, L.L.C. dated June 15, 2001 and recorded
         on June _____, 2001 as Document No. _____.

BI                                        * * * * *